23605.   KING et al. v. YOUNG et al.

ARGUED JULY 12, 1966—DECIDED SEPTEMBER 9, 1966.

*Reinhardt, Ireland, Whitley & Sims, Glenn Whitley, Floyd H. Wardlow, Jr.*, for appellants.

*John R. Rogers*, for appellees.

ALMAND, Justice.  Hodge King and his wife, Hattie King, offered for probate in solemn form in the Turner County Court of Ordinary the will of Fannie B. Jones to which Gertrude Davis and Nilar Young, sister and niece of the testatrix, filed a caveat. The will was admitted to probate and the caveators appealed to the Turner Superior Court.  The sole ground of the caveat was that "the said Fannie B. Jones did not execute the said pretended will freely and voluntarily, but was moved thereto by undue influence and persuasions over her by the sole beneficiaries, Hattie Frances King, and Hodge King, and it is, therefore, not her will."  On the trial of the case, the jury found in favor of the caveators.  A new trial was granted on the motion of the propounders, but their motion for a judgment notwithstanding the verdict was overruled.  The propounders' appeal from this order is before us for review.

According to the three witnesses, on April 27, 1963, Fannie B. Jones executed her last will and testament in which she devised her home and the lot upon which it was located to Hattie King and her husband, Hodge King.  The evidence without dispute shows that Fannie B. Jones was 82 years old at the time she executed the will and that she owned and resided in a house (which was subject to a loan indebtedness) located next to the home of the Kings.

The will was prepared by one A. R. Smith, who testified that Fannie B. Jones came to his office and told him that she wanted

to leave her home to Hodge and Hattie King because Hattie had been good to her. Smith and two other witnesses testified that neither Hodge nor Hattie King was present at the time the will was executed. There was evidence that Hodge King at the request of Fannie Jones on several occasions had performed errands for her, and his wife, Hattie, had visited Fannie when she was sick. There was evidence that both the Kings were 25 to 30 years younger than Fannie Jones and were college graduates. On one occasion, when the testatrix was ill, the evidence showed that Hodge King paid an installment of $11 on Fannie's home loan. There was no evidence that Fannie was insane or mentally ill other than at times she did appear to act in an eccentric manner.

Mrs. Ethel G. Rainwater, a public health nurse for Turner County, testified that she visited Fannie Jones on March 22, 1963, "for the purpose of getting her in for an x-ray at our regular clinic in May and I told her what I wanted and she said, 'Mrs. Rainwater, have you got a few minutes?' and I said, 'Yes, Fannie, I do.' She said, 'I want to talk to you.' She said, 'I'd like your advice about a matter.' And I said, 'Well, I'll be glad to listen to you, but I don't know about my advice, but I'll be glad to listen to what you've got to say.' And she said, 'I've been home from the hospital a year and a half, and I've had a real hard time since I've been home from the hospital, because nobody has been here to help me, none of my people have [done] anything for me.' And said, 'I don't know what I would have done if it hadn't been for Hattie King, she has been so good to me.' Said, 'I made a will before I went to the hospital, but since coming home from the hospital and the fact that my people have not visited me or have not helped in any way, I would like to change my will.' And she asked me if I thought that would be all right, and I told her, I said, 'Well, Fannie, I don't know too much about law, but I think a person has the right to change their will, if they want to, it's your property and I don't see why you couldn't do as you see fit.' And I said, 'If I wanted to, I would do it.' She said, 'Well, Mrs. Rainwater, my people don't or haven't helped me any and when I die, I certainly don't want no squabbling over what little I have left.'

And I said, 'Well, if you feel like that, Fannie, I would certainly, if I was going to change my will, I would do it legally, so that there won't be any squabbling over what you have.' And she said, "That's what I want to do.' " Just prior to her going to the hospital and shortly before her death, Fannie went by the home of Hodge King and asked him to keep some of her papers until she returned. Upon hearing of her death, King took the papers to Fannie's lawyer's office and there learned for the first time that she had made a will leaving her home to King and his wife.

In the case of *Crews v. Crews,* 219 Ga. 459 (134 SE2d 27) this court said at page 464 that "it is insufficient to show merely that the persons receiving substantial benefits under the instrument sought to be propounded occupied a confidential relationship to the testator and had an opportunity to exert undue influence. *Norman v. Hubbard,* 203 Ga. 530 (2) (47 SE2d 574). The indulgence of mere suspicion of undue influence cannot be allowed. *Hill v. Deal,* 185 Ga. 42, 45 (195 SE 858); *Whitfield v. Pitts,* 205 Ga. 259, 273 (53 SE2d 549). Even the evidence of undue influence over the mind and will of the testator at another time will not invalidate a will. Only such influence which exists *at the time of the purported will's execution* destroys the testator's freedom of volition so as to invalidate a will. *Northwestern University v. Crisp,* 211 Ga. 636, 648 (88 SE2d 26)."

There was no evidence that either of the Kings ever said or did anything to the testatrix concerning making her will. There was direct evidence without conflict that neither King nor his wife knew of the will until after the death of the testatrix. While there was a considerable disparity in the ages of the testatrix and the Kings and a marked difference in the mental capacity of the educated Kings compared to that of the uneducated testatrix, there was no evidence that they even attempted to impose their will on her by reason of this mental superiority. There was no evidence that, acting as good neighbors and friends, the Kings sought to influence the testatrix in making a will.

Appellees in their brief argue that Hodge King occupied a position of confidential relationship with the testatrix and

due to the disparity in age and mentality, he is presumed to have exerted undue influence upon her, and the burden was on him to rebut the presumption. This argument has no basis on the undisputed facts in this record. He was not related to the testatrix. He was not her agent nor was there any confidential relationship between them. Reposing trust and confidence in another does not create a confidential relationship. *Dover v. Burns,* 186 Ga. 19, 26 (196 SE 785). The absence of such relationship makes the ruling in *Trustees of Jesse Parker Williams Hospital v. Nisbet,* 191 Ga. 821 (14 SE2d 64), inapplicable here.

The evidence demanded a finding that the will was freely and voluntarily executed by the testatrix free from any influence of the beneficiaries in the will. *Moore v. Thornton,* 180 Ga. 533 (179 SE 720); *Peavy v. Crawford,* 182 Ga. 782 (187 SE 13); *Crews v. Crews,* 219 Ga. 459, supra. The court erred in overruling the propounders' motion for a judgment notwithstanding the verdict.

*Judgment reversed with direction that a judgment be entered for the appellants according to their motion. All the Justices concur.*