### S04A0382. HOLLAND v. HOLLAND et al.
#### (596 SE2d 123)

BENHAM, Justice.

This appeal is from the denial of a motion for judgment notwithstanding the verdict following a jury verdict denying probate to the last will and testament of Edd Holland. Edd's son Arnold, as executor, propounded the will and Edd's widow, Trevice, now deceased, and Edd's other son Woodard filed a caveat asserting mistake of fact and undue influence. A jury denied probate to the will in a general verdict and the trial court denied Arnold's motion for j.n.o.v. Appealing as executor of Edd's estate, Arnold contends no evidence was presented authorizing the jury to find mistake of fact or undue influence, the grounds raised by the caveat, or to reject the will on the basis of lack of testamentary capacity or fraud, issues presented to the jury in the trial court's instructions. On appeal from the denial of a motion for j.n.o.v., this court must determine whether, construing the evidence in a light most favorable to the party who obtained the jury verdict, there is any evidence to support the jury's verdict. *Sims v. Sims*, 265 Ga. 55, 56 (452 SE2d 761) (1995).

1. "The propounder of a will has the burden of establishing a prima facie case, which includes showing . . . that at the time of its execution the testator apparently had sufficient mental capacity to make it. . . . [Cits.] When this has been done, the burden of proof shifts to the caveator. [Cits.]" *Singelman v. Singelmann*, 273 Ga. 894 (1) (548 SE2d 343) (2001). Appellees concede on appeal the propounder's evidence made a prima facie case of testamentary capacity, and they do not identify any evidence suggesting Edd lacked sufficient mental capacity to make a will. That being so, and our review of the record having failed to reveal any such evidence, we must conclude the jury's verdict rejecting the will could not legally be based on the ground of lack of testamentary capacity.

2. In support of their claim of undue influence, appellees point to the facts the will was drafted by Arnold's lawyer, Arnold suggested to Edd his will should be redone, Arnold was present in the lawyer's office on some occasions when the will was discussed, the will's disposition of Edd's property conflicted with his previous declarations of his intended disposition, and Arnold received a larger share than Woodard or their deceased brother's children. They also contend a confidential relationship existed between Edd and Arnold sufficient to raise a presumption of undue influence.

Undue influence sufficient to invalidate a will amounts to deception or force and coercion operating on the testator at the time of execution such that the testator is deprived of free agency and the will of another is substituted for his. Evidence showing only an opportunity to influence and a substantial benefit under the will does not show the exercise of undue influence. *Quarterman v. Quarterman*, 268 Ga. 807 (2) (493 SE2d 146) (1997).

There is no question an opportunity to influence existed because uncontradicted testimony established the fact Arnold told Edd his existing will was "a mess" and Arnold took Edd to Arnold's lawyer to have a new will prepared. Likewise the provisions of the will providing for Arnold to receive the homeplace upon his mother's death while Woodard, his sons, and the children of a deceased brother shared the proceeds from the sale of another property equal in value to the homeplace show a substantial benefit accruing to Arnold under the new will. However, an opportunity to influence and a substantial benefit are all the evidence shows.

> A presumption of undue influence arises when it is shown that the will was made at the request of a person who receives a substantial benefit, who is not a natural object of the maker's estate, and who held a confidential relationship with the testator. [Cit.] However, "[a] person standing in confidential relation to another is not prohibited from exercising any influence whatever to obtain a benefit to himself. The influence must be what the law regards as undue influence. Such influence that . . . would give dominion over the will to such an extent as to destroy free agency, or constrain one to do against his will what he is unable to refuse." [Cit.]

*Andrews v. Rentz*, 266 Ga. 782 (3) (470 SE2d 669) (1996). While the evidence at trial supported a finding that Edd's will was made at Arnold's request and that Arnold stands to receive a substantial benefit, it did not support a finding of the sort of confidential relationship between Arnold and Edd which would raise the presumption of undue influence.

> A confidential relationship is one "where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another." [Cit.] "Evidence showing only that the deceased placed a general trust and confidence in the primary beneficiary is not sufficient to trigger the rebuttable presumption that undue influence was exercised. . . . In order to give rise to the rebuttable presumption . . . , the evidence must show a confidential relationship wherein the

> primary beneficiary was capable of exerting the power of leadership over the submissive testator." [Cits.]

*White v. Regions Bank*, 275 Ga. 38 (1) (561 SE2d 806) (2002). The evidence presented at trial showed Edd to be a strong individual who followed his own judgment. Contrary to appellees' argument that no reason other than Arnold's undue influence appeared for Edd's departure from his previously stated intent for disposing of his estate, the attorney who prepared the will testified Edd wanted the changes made in order to prevent one of his sons from influencing his mother to "fritter away" the estate. In short, there simply was not any evidence at trial to support undue influence as a ground for denying probate of Edd's will.

3. As to the fraud asserted by appellees to void the will, there is no evidence in the record showing any misrepresentations made by Arnold to Edd leading to his execution of the will. "The type of fraud that 'will invalidate a will must be fraud which operates upon the testator, i.e., a procurement of the execution of the will by misrepresentations made to him. It exists only when it is shown that the testator relied on such a representation and was deceived.' [Cit.]" *Edwards v. Shumate*, 266 Ga. 374, 375-376 (468 SE2d 23) (1996). In support of their argument, however, appellees cite only testimony that Arnold had told family members he had "input into getting the will made" and he had taken his father to a lawyer who "fixed [the will] like it ought to be fixed." Appellees' position is the same as that of the appellants in *Edwards v. Shumate*, supra: "[W]ithout pointing to any specific evidence of fraud, [appellees] contend that the only reasonable inference to be drawn from the execution of the [will] is that [its] execution was the result of misrepresentations by [Arnold]. We have held, however, that evidence of the mere opportunity and motive for fraud is insufficient to create an issue of fact on such a claim." Id. at 376. There being no evidence adduced at trial of any fraudulent misrepresentations made by Arnold, fraud could not be a basis for rejecting the will.

4. Although appellees frame one argument in terms of mistake of fact, what they actually argue is that because Edd was illiterate, he could not have understood the provisions of the will and was, therefore, unaware of its contents. OCGA § 53-4-21 requires such an awareness: "Knowledge of the contents of a will by the testator is necessary to the validity of the will." The only evidence regarding Edd's knowledge of the content of his will was the testimony of the attorney who drafted the will. He testified Edd came to his office several times to work on the will and on the day the will was executed, he read the will to Edd and explained the meaning of each provision. To oppose that direct evidence, appellees offer only conjecture. "There was no

evidence that the [testator] did not know the contents of the will, and the above-stated testimony established that [he] did." *Whitfield v. Pitts*, 205 Ga. 259, 270 (53 SE2d 549) (1949). There being no evidence to contradict the evidence that Edd knew the contents of his will and no evidence of any mistake of fact regarding the conduct of an heir, those grounds, like the others discussed above, cannot serve as a basis for rejecting Edd Holland's will.

"To set aside a will and thus deprive a person of the valuable right to make a will, a stringent standard must be met." *Kendrick-Owens v. Clanton*, 271 Ga. 731, 732 (524 SE2d 237) (1999). In the present case, with no evidence to support any of the grounds asserted for invalidating the will, that standard has not been met and the propounder of the will was entitled to the entry of j.n.o.v. *Sims v. Sims*, supra.

*Judgment reversed. All the Justices concur.*

DECIDED APRIL 27, 2004.

*Randall M. Clark*, for appellant.
*Strickland & Garmon, Dennis J. Strickland, Sr.*, for appellees.